IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

JAMES JONES, # 150204,        *
        *
    Plaintiff,        *
        *
vs.        * CIVIL ACTION NO. 18-00488-CG-B
        *
CYNTHIA STEWART, *et al.*,        *
        *
    Defendants.        *

## REPORT AND RECOMMENDATION

Plaintiff James Jones, an Alabama prison inmate proceeding *pro se* and *in forma pauperis*, filed a complaint under 42 U.S.C. § 1983. (Doc. 1). This action has been referred to the undersigned Magistrate Judge for appropriate action pursuant to 28 U.S.C. § 636(b)(1)(B) and S.D. Ala. GenLR 72(a)(2)(R) and is now before the Court on Defendants Cynthia Stewart, Terry Raybon, and Phillip Mitchell's motion for summary judgment. (Docs. 25, 26, 28).[1] After careful review, it is recommended that Defendants' motion for summary judgment be **GRANTED,** and that this action be **DISMISSED with prejudice.**

---

[1] In an order dated April 21, 2020 (Doc. 28), Defendants' answer and special report (Docs. 25, 26) were converted to a motion for summary judgment.

**PROCEDURAL AND FACTURAL BACKGROUND**[2]

In his § 1983 complaint, Plaintiff Jones alleges that on September 3, 2017, while he was incarcerated at Holman Correctional Facility ("Holman"), Defendants Stewart, Raybon, and Mitchell, who were wardens at the facility, knowingly allowed or conspired with inmate Greg Caudle to have Jones assaulted so that Caudle could obtain Jones's cell phone in order for Caudle to continue using an electronic device that prison administrators had provided him. (Doc. 1 at 4).

According to Jones, on September 3, 2017, two unnamed inmates attacked him while he was sleeping in Holman's D-Dorm. (Doc. 1 at 4; Doc. 29 at 1). Jones grabbed his assailant's prison-made knife to protect himself from being stabbed in the chest and torso but was repeatedly punched while the inmates attempted to pull the knife from him. (Doc. 29 at 1-2). Jones claims he sustained bruises to his face and head and a severe cut to his pinkie finger. (Docs. 1 at 4; Doc. 29 at 2). No officers were present in the dormitory during the assault, and the two inmate assailants were

---

[2] The factual allegations are taken from Jones's § 1983 form complaint, which was signed under penalty of perjury. (See Doc. 1 at 12). Being in this form, the complaint will be considered by the Court in ruling on the motion for summary judgment. See Perry v. Thompson, 786 F.2d 1093, 1095 (11th Cir. 1986) (per curiam). However, "the 'facts' as accepted at the summary judgment stage of the proceedings, may not be the 'actual' facts of the case." Priester v. City of Riviera Beach, Fla., 208 F.3d 919, 925 n.3 (11th Cir. 2000).

let out of the dorm following the attack. (Doc. 1 at 4). Jones alleges that as he walked to the front of the dorm to seek medical attention for his finger, inmate Caudle stated, "I did that, I took your shit nigger. I'm doing what the Warden and Captain told me to do." (Id. at 4-5).

Jones asserts that Lt. Franklin (a non-party) was standing at the gate at the front of D-Dorm and assisted him in getting medical attention. (Id. at 5). However, Lt. Franklin did not create an incident report, nor did he ask any questions regarding the assault or inquire as to Jones's bleeding finger. (Id.). According to Jones, he received medical care in the health care unit, and while there, Nurse Walls stated to another nurse, "He almost lost his finger because they want to play a game." (Id.).

Jones contends that prior to the attack, Defendant Warden Raybon would come to D-Dorm and talk to inmate Caudle, and that these talks became more frequent after the September 3, 2017 attack. (Id. at 5-6). He also alleges that he overheard a conversation between Defendants Warden Mitchell and Warden Stewart at a Stop the Violence Cookout on September 15, 2017, where Mitchell told Stewart, "That's the one that Greg chose and got the phone from" (while indicating Jones). (Id. at 5).

Jones further alleges that on October 10, 2017, Wardens Raybon and Mitchell entered D-Dorm and talked with inmate Caudle. (Id.).

3

According to Jones, he questioned Warden Raybon as follows: "Why were they letting Greg Caudle do and get a way [sic] with what he was doing?" (Id. at 6). Warden Raybon responded, "Me and Greg went to school together." (Id.). Jones further contends that he heard Warden Raybon ask Warden Mitchell, "How do he know we have anything to do with this", and Warden Mitchell answered, "I guess he heard me when I told Cynthia." (Id.). Warden Raybon then instructed Jones to come to the shift office to speak with him after the institutional count. (Id.).

Jones alleges that when he arrived at the shift office, neither Warden Raybon nor Warden Mitchell were there. (Id.). Instead, Lt. Langham and Ms. Brown were present, and they began to record an interview with him regarding a sexual harassment complaint that Jones had allegedly made against inmate Caudle. (Id.). Jones denied making any sexual harassment claim against inmate Caudle but proceeded to tell the officers about "the things that Administration had let Greg Caudle do[] and was continuing to allow him to do[,]" namely, having Jones assaulted to obtain a cell phone, holding or discarding his incoming mail, and giving inmate Caudle "some type of electronic device that allow[ed] him to know [Jones's] thoughts[.]" (Id. at 6-7). Jones further informed the officers that this was supposedly some "type of game," of which he wanted no part. (Id. at 7). Jones asserts that he

and inmate Caudle were asked to sign a living agreement, and both agreed to do so. (Id.).

Jones asserts that on October 12, 2017, he was questioned by I&I Investigator David Jones about the sexual harassment complaint that he had allegedly filed against inmate Caudle. (Id.). Per Plaintiff Jones, Investigator Jones informed him that inmate Caudle was in a holding cell because of the sexual harassment complaint filed against him. (Id.). Plaintiff Jones claims that he told Investigator Jones that "Greg Caudle was down in D-Unit when I left, that I didn't file no complaint, and I don't know anything about a sexual harassment complaint." (Id.). Later that day, Plaintiff Jones was told he was being transferred to the segregation unit. (Id. at 7-8). His property was packed, he received a body chart, and he was placed in holding cell P-3 until October 31, 2017, when he was moved to the segregation unit.[3] (Id. at 8-9). Jones claims that while he was housed in cell P-3 and the segregation unit, inmate Caudle continued to use the electronic device.[4] (Id. at 8-9). He further claims that upon his release

_____

[3] According to Jones, cell P-3 is "nasty," and he was placed in that cell because "they trying to make it seem as though he's hearing voices." (Doc. 1 at 8).

[4] Jones claims that during the twenty days he was held in cell P-3, many people communicated with him on the electronic device that the administration gave inmate Caudle, inmate Joseph Allen, Officer Sims, Officer Corey Lewis, and a nurse. (Doc. 1 at 8-9).

from the segregation unit, he was informed that his property was lost, and he has been unable to recover his trial transcript despite filing three complaints with the Board of Adjustment. (Id. at 9). Furthermore, Jones claims that as of the filing of his complaint on November 19, 2018, the prison administration was still allowing inmate Caudle to use the electronic device in hopes that Jones would report to mental health that he was hearing voices. (Id.).

Jones seeks $350,000.00 from each Defendant and the sum of five million dollars for "emotional distress, actual, consequential, nominal, and punitive damages." (Id. at 12).

Defendants have answered the suit (denying the allegations and asserting various immunity defenses)[5] and filed a special

_____

[5] It is unclear from Jones's complaint whether he is suing Defendants in their official and/or individual capacities. As state officers, Defendants Stewart, Raybon, and Mitchell are absolutely immune from suit for damages in their official capacities. See Harbert Int'l, Inc. v. James, 157 F.3d 1271, 1277 (11th Cir. 1998) (state officials sued in their official capacities are protected from suit for damages under the Eleventh Amendment). In addition, "[q]ualified immunity protects government officials performing discretionary functions from suits in their individual capacities unless their conduct violates 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" Dalrymple v. Reno, 334 F.3d 991, 994 (11th Cir. 2003) (quoting Hope v. Pelzer, 536 U.S. 730, 739 (2002)). However, having found herein that Plaintiff's allegations do not establish a constitutional violation, "there is no necessity for further inquiries concerning qualified immunity." Saucier v. Katz, 533 U.S. 194, 201 (2001), overruled in part by Pearson v. Callahan, 555 U.S. 223 (2009).

report in support of their position. (Docs. 25, 26). In their special report, Defendants flatly deny that Plaintiff Jones was assaulted on September 3, 2017, and they point to the lack of a body chart or incident report as evidentiary proof. (Doc. 26 at 4). Defendants further deny that prison officials had inmate Caudle install devices on Jones to listen to his thoughts. (Id. at 5). Defendants have also submitted their personal affidavits in response to the allegations asserted against each.

In her affidavit, Defendant Stewart avers, "[a]t no time have I conspired or instructed an inmate to assault another inmate." (Doc. 26-2 at 1). She further avers that she "can-not recall speaking to Warden Mitchell regarding inmate Jones." (Id.). Defendant Stewart denies any knowledge of an inmate possessing "some type of electronic device" and explains that Jones's Board of Adjustment claim was denied because he failed to produce reliable evidence substantiating his claim. (Id. at 2).

Similarly, Defendant Mitchell states, "[a]t no time have I collaborated or [given] orders to an inmate to assault another inmate." (Doc. 26-3 at 1). Defendant Mitchell also avers that he does not "recall speaking to Warden Stewart [or Warden Raybon] concerning inmate Jones" and has "no knowledge of what inmate Jones is referring" to with regard to an inmate having "some type of electronic device." (Id. at 1-2).

Likewise, Defendant Raybon declares that the "allegation that [he] or anyone else allowed Inmate Caudle to assault [Jones] and to obtain a cell phone and continue to use electronic devices provided to Inmate Caudle by the administration, are false." (Doc. 26-4 at 2). He further explains that on October 10, 2017, Jones complained that he was sexually harassed by inmate Caudle while he was asleep. (Id. at 1). The Prison Rape Elimination Act Coordinator for Holman, Lt. Sharon Langham, was notified, as well as I & I Investigator Leroy Dale. (Id.). On October 12, 2017, Investigator David Jones investigated the claim and determined it to be "unfounded."[6] (Id.). Defendant Raybon admits that Plaintiff Jones and inmate Caudle both signed a living agreement on October 10, 2017, but he asserts that when inmate Caudle was released from the Restrictive Housing Unit on October 13, 2017 (and placed back in D-Dorm), Jones stated he was suicidal and was placed in a crisis cell. (Id. at 1-2). Thereafter, on October 31, 2017, Jones was placed in the Restrictive Housing Unit, where he remained until he was returned to the general population's A-Dorm on April 2, 2018. (Id.). According to Defendant Raybon, Jones was assaulted in A-

---

[6] Defendants, collectively, submit the duty officer report and incident report of October 10, 2017, indicating that Plaintiff Jones reported being sexually harassed by inmate Caudle, and the October 12, 2017 letter from the Investigation and Intelligence Division determining the sexual harassment claim to be unfounded. (Docs. 26-5, 26-6, 26-8).

Dorm by unknown inmates on November 23, 2018, and after returning from a free world hospital and being released from the infirmary ward, he was placed back in the Restrictive Housing Unit on December 20, 2018. (Id.). Defendant Raybon testifies that Jones refused to be housed in the general population and therefore remained in the segregation unit. (Id.). It appears from the record that Jones remained in Holman's Restrictive Housing Unit until he was transferred to Donaldson Correctional Facility around March 2020. (See Doc. 27).

In an order dated April 21, 2020, the Court converted Defendants' answer and special report (Docs. 25, 26) into a motion for summary judgment, explained to the parties the procedure for such motions under Federal Rule of Civil Procedure 56, and afforded the parties an opportunity to submit additional information or evidence in support of or in opposition to the motion by June 18, 2020. (Doc. 28). Jones was also directed to inform the Court in writing by said deadline whether he desired to continue with this litigation. (Id. at 4).

In a sworn "Affidavit" in response to the converted motion, Jones asserts that he is "not able to depose officers, nurses, or inmates and [] cannot subp[o]ena the records," but "if this was to happen, Defendants could only submit a confession of judgment."

(Doc. 29 at 4-5).[7]  He argues that the absence of a body chart and

_____

[7] In November 2020, Jones belatedly filed motions to depose Defendants and twenty-two other alleged witnesses in this case. (Docs. 30, 31).  Specifically, Jones requested that the Court enter an order requiring the Defendants and other witnesses to "submit to an oral deposition by written transcription and video on December 21, 2020 at 10:00 a.m., at Holman Correctional Facility." (Doc. 30 at 3; Doc. 31 at 2).  In addition to seeking to depose multiple correctional officers and prison medical staff, Jones seeks to depose inmate Caudle, who is currently incarcerated at Bullock Correctional Facility.  (See Doc. 30 at 1).

     Jones's requests to take oral depositions are due to be denied for several reasons.  First, Jones inexplicably and unreasonably waited almost five months *after* the motion for summary judgment had already been taken under submission to request discovery. Second, Jones's motions do not explain what information he seeks from the listed individuals, and Jones has made no showing suggesting that the requested discovery would advance his claims. Third, Jones has not shown cause for the large number of depositions requested by explaining why the information sought from each of these individuals is not cumulative or duplicative and could not be obtained by less burdensome, expensive, and problematic means.  See Bell v. Godinez, 1995 U.S. Dist. LEXIS 12606, at *5, 1995 WL 519970, at *2 (N.D. Ill. Aug. 30, 1995) (finding that "allowing prisoners to take [depositions of prison officials] as a routine practice would be highly disruptive of prison administration, given the large number of prisoner suits pending against the senior prison officials" and concluding that prisoner could "obtain the information he needs through other, less problematic means" such as depositions upon written examination); Muhammad v. Bunts, 2006 U.S. Dist. LEXIS 116356, at *10-11, 2006 WL 8442090, at *3-4 (N.D.W. Va. Oct. 2, 2006) (foreseeing "additional problems with security and maintaining staff authority if inmates are allowed to take the depositions of prison officials" and "similar problems in allowing *pro se* inmates to take the oral depositions of other inmates").  Fourth, Jones gives no indication that he is able and willing to bear the costs of having the depositions transcribed and videorecorded.  Although Jones appears to assume that Defendants, the Alabama Department of Corrections, or the Court will pay for the costs of arranging, transcribing, and recording the depositions, his "*in forma pauperis* status does not entitle him to discovery at the government's expense."  See Bunts, 2006 U.S. Dist. LEXIS 116356, at *6 n.2, 2006 WL 8442090, at *2 n.2 ("The plain language of 28

incident report does not mean that the September 3, 2017 attack did not occur. Instead, Jones contends that medical records exist (specifically a body chart) and that, if deposed, Nurse Young, Dr. Manuel Pouparinas, and Lt. Franklin can verify that he was attacked on September 3, 2017. (Id. at 2). Jones continues to dispute that he ever made a sexual harassment complaint regarding inmate Caudle and implies that the sexual harassment complaint was conjured up by prison administrators after he "confronted Warden Raybon [in front of Warden Mitchell and some other inmates] about the things that he was letting inmate Greg Caudle do." (Id.). Jones also disputes Defendants' claim about inmate Caudle being placed in the Restrictive Housing Unit and questions why Jones was placed in restrictive housing. (Id. at 2-3).

Jones also alleges in his response that on November 23, 2018, he was attacked (stabbed twenty-eight times) by multiple inmates in A-Dorm, in retaliation for filing this lawsuit on November 19, 2018. (Id. at 3). Following his release from the hospital and prison infirmary after the attack, Jones was placed back in the

---

U.S.C. § 1915 does not provide for the payment of discovery matters to aid an indigent litigant."); Williams v. Morales, 2010 U.S. Dist. LEXIS 40336, at *2, 2010 WL 1688469, at *1 (S.D. Ga. Mar. 24, 2010) (stating that Section 1983 prisoner plaintiff "is responsible for the cost of any deposition, *in forma pauperis* status or not"), report and recommendation adopted, 2010 U.S. Dist. LEXIS 40355, 2010 WL 1688461 (S.D. Ga. Apr. 23, 2010). Accordingly, Jones's motions to take depositions (Docs. 30, 31) are **DENIED.**

Restrictive Housing Unit, where Jones claims he was without a change of clothes, sheets, and blanket for two weeks. (Id.). Jones claims that if the Alabama Department of Corrections Commissioner Dunn and Warden Stewart would have investigated his claims when he originally contacted them, "this all could have been avoided." (Id. at 4).

## II.  **SUMMARY JUDGMENT STANDARD**.

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a)[8]; see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Garczynski v. Bradshaw, 573 F.3d 1158, 1165 (11th Cir. 2009) ("[S]ummary judgment is appropriate even if 'some alleged factual dispute' between the parties remains, so long as there is 'no genuine issue of material fact.'") (emphasis omitted).

The party asking for summary judgment "always bears the initial responsibility of informing the district court of the basis

---

[8] Rule 56 was revised in 2010 "to improve the procedures for presenting and deciding summary-judgment motions and to make the procedures more consistent with those already used in many courts. The standard for granting summary judgment[, however,] remains unchanged. . . . The amendments [have] not affect[ed] continuing development of the decisional law construing and applying these phrases." Fed. R. Civ. P. 56 advisory committee's note on 2010 amendments.

for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Celotex, 477 U.S. at 323. The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing, or pointing out to, the district court that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. Id. at 322-24.

> Once the moving party has met its burden, Rule 56(e)
> "requires the nonmoving party to go beyond the pleadings
> and by [its] own affidavits, or by the 'depositions,
> answers to interrogatories, and admissions on file,'
> designate 'specific facts showing that there is a
> genuine issue for trial.'" Id. at 324. To avoid summary
> judgment, the nonmoving party "must do more than show
> that there is some metaphysical doubt as to the material
> facts." Matsushita Elec. Indus. Co. v. Zenith Radio
> Corp., 475 U.S. 574, 586 (1986). On the other hand, the
> evidence of the nonmovant must be believed and all
> justifiable inferences must be drawn in its favor. See
> Anderson, 477 U.S. at 255.

ThyssenKrupp Steel USA, LLC v. United Forming, Inc., 926 F. Supp. 2d 1286, 1289-90 (S.D. Ala. Jan. 29, 2013).

The requirement to view the facts in the nonmoving party's favor extends only to "genuine" disputes over material facts. A genuine dispute requires more than "some metaphysical doubt as to material facts." Garczynski, 573 F.3d at 1165 (citation and

internal quotation marks omitted). "A 'mere scintilla' of evidence is insufficient; the non-moving party must produce substantial evidence in order to defeat a motion for summary judgment." Id. In addition, "[t]here is no burden upon the district court to distill every potential argument that could be made based upon the materials before it on summary judgment." Resolution Trust Corp. v. Dunmar Corp., 43 F.3d 587, 599 (11th Cir. 1995). More importantly, where "opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." Scott v. Harris, 550 U.S. 372, 380 (2007); see also Logan v. Smith, 439 F. App'x 798, 800 (11th Cir. 2011) (per curiam)[9] ("In cases where opposing parties tell different versions of the same events one of which is blatantly contradicted by the record—such that no reasonable jury could believe it—a court should not adopt the contradicted allegations.").

## III.  DISCUSSION.

"In order for a plaintiff to establish a claim under 42 U.S.C. § 1983, he must prove (1) a violation of a constitutional right,

---

[9] Federal Appendix cases are unpublished Eleventh Circuit opinions and are not considered binding precedent, but they may be cited as persuasive authority. See 11th Cir. R. 36-2 ("Unpublished opinions are not considered binding precedent, but may be cited as persuasive authority.").

and (2) that the alleged violation was committed by a person acting under the color of state law." Martinez v. Burns, 459 F. App'x 849, 850-851 (11th Cir. 2012) (per curiam) (citing Holmes v. Crosby, 418 F.3d 1256, 1258 (11th Cir. 2005)).  The parties do not dispute that Defendants were acting under color of state law, and Jones appears to seek redress pursuant to the Eighth and Fourteenth Amendments.

"The Eighth Amendment, applicable to the states through the Fourteenth Amendment, governs the conditions under which convicted prisoners are confined and the treatment they receive while in prison." Id. at 851.  The Amendment states that "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. Const. amend. VIII.  "[T]he unnecessary and wanton infliction of pain . . . constitutes cruel and unusual punishment forbidden by the Eighth Amendment." Whitley v. Albers, 475 U.S. 312, 319 (1986) (citations and internal quotation marks omitted).  "Among 'unnecessary and wanton' inflictions of pain are those that are 'totally without penological justification.'" Rhodes v. Chapman, 452 U.S. 337, 346 (1981) (citations omitted).

For prisoners, "[t]he Eighth Amendment can give rise to claims challenging specific conditions of confinement, the excessive use of force, and the deliberate indifference to a prisoner's serious

medical needs." <u>Thomas v. Bryant</u>, 614 F.3d 1288, 1303 (11th Cir. 2010). Additionally, "[b]eyond just restraining prison officials from inflicting 'cruel and unusual punishments' upon inmates, '[t]he Amendment also imposes duties on these officials, who must . . . "take reasonable measures to guarantee the safety of the inmates."'" <u>Bowen v. Warden, Baldwin State Prison</u>, 826 F.3d 1312, 1319-20 (11th Cir. 2016) (quoting <u>Farmer v. Brennan</u>, 511 U.S. 825, 832 (1994).

## A. Alabama Department of Corrections Cannot be Added as Defendant.

In his "Affidavit" in response to the motion for summary judgment, Jones seeks to add the Alabama Department of Corrections ("ADOC") as a defendant in this action. (Doc. 29 at 7). However, ADOC is immune from § 1983 claims under the Eleventh Amendment to the United States Constitution. <u>See</u> <u>Gramegna v. Johnson</u>, 846 F.2d 675, 677 (11th Cir. 1988) ("[T]he Supreme Court has held that a suit directly against the Alabama Department of Corrections is barred by the eleventh amendment.") (citing <u>Alabama v. Pugh</u>, 438 U.S. 781, 782 (1978)).[10] Accordingly, any claims against ADOC would be due to be dismissed. Thus, Jones's request to add a claim

---

[10] The two exceptions to this immunity are if the state has waived its immunity by legislative enactment or if Congress has abrogated the state's immunity. <u>Carr v. City of Florence, Ala.</u>, 916 F.2d 1521, 1524 (11th Cir. 1990). Neither of these exceptions are applicable here.

against ADOC is **DENIED** as futile and frivolous.

**B. Certain claims regarding the September 2017 attack are incredible as a matter of law.**

"As a general principle, a plaintiff's testimony cannot be discounted on summary judgment unless it is blatantly contradicted by the record, blatantly inconsistent, or incredible as a matter of law, meaning that it relates to facts that could not have possibly been observed or events that are contrary to the laws of nature." Feliciano v. City of Miami Beach, 707 F.3d 1244, 1253 (11th Cir. 2013). Although not the model of clarity, Jones's complaint appears to assert that Defendants allowed inmate Caudle to arrange for Jones to be assaulted in order to obtain his cell phone for the purpose of enabling Caudle to continue using an administration-provided electronic device that allowed Caudle to "know" Jones's thoughts. (See Doc. 1 at 4-7).

Accepting as true, for purposes of this motion, Jones's claim that he was assaulted on September 3, 2017, the undersigned finds that to the extent Jones is contending that the assult was arranged by Defendants to obtain his cell phone to allow for the continued use of an electronic device to ascertain Jones's thoughts, the claim falls into the category of "incredible as a matter of law" and is the sort of claim that courts routinely dismiss as factually frivolous. See Hogan v. Georgia, 812 F. App'x 975 (11th Cir. 2020) (per curiam) (finding complaint alleging "vast conspiracy to

17

engage in illegal medical experimentation" to be "patently frivolous"); O'Laughlin v. Corrigan, 2019 U.S. Dist. LEXIS 14612, at *3-4, 2019 WL 367154, at *2 (S.D. Tex. Jan. 30, 2019) (stating that plaintiff's allegation that a transmitter or microchip had been covertly implanted in his body for the purpose of surveillance was the type of claim courts routinely dismiss as factually frivolous); Golden v. Coleman, 429 F. App'x 73, 74 (3d Cir. 2011) (per curiam) (dismissing as frivolous a prisoner's claim that prison employees planted "Government Micro Eye Cameras" in his food, which then attached to the "visual cortex" in his brain and sent images to a computer for broadcast on "prison television"); Manco v. Does, 363 F. App'x 572, 575 (10th Cir. 2010) (affirming dismissal as frivolous of the plaintiff's claim that prison officials implanted a tracking device in his jaw to "monitor his thoughts and send him inaudible, profane messages"); Johnson v. Drug Enforcement Agency, 137 F. App'x 680, 680-81 (5th Cir. 2005) (per curiam) (finding plaintiff's allegation that the DEA implanted a transmitter in his scalp to be factually frivolous).

Accordingly, to the extent Jones is claiming that Defendants allowed or arranged for him to be attacked on September 3, 2017 so that his thoughts could be monitored, Defendants are due to be **GRANTED** summary judgment.

**C. Jones has not established that Defendants failed to protect him from attack on September 3, 2017.**

A prison official's duty under the Eighth Amendment is to ensure "reasonable safety," "a standard that incorporates due regard for prison officials' 'unenviable task of keeping dangerous men in safe custody under humane conditions.'" Farmer, 511 U.S. at 844-45 (citations omitted). However, "a prison custodian is not the guarantor of a prisoner's safety," Purcell ex rel. Estate of Morgan v. Toombs Cnty., Ga., 400 F.3d 1313, 1321 (11th Cir. 2005) (citation omitted), and "[i]t is not . . . every injury suffered by one prisoner at the hands of another that translates into constitutional liability for prison officials responsible for the victim's safety." Farmer, 511 U.S. at 834. Prison officials must "take reasonable measures to guarantee the safety of the inmates," Hudson v. Palmer, 468 U.S. 517, 526-27 (1984), but there is no liability for "an official's failure to alleviate a significant risk that he should have perceived but did not. . . ." Farmer, 511 U.S. at 838. It is not enough that an inmate proves that the defendant should have known of the risk, but did not, as actual knowledge is the key. See, e.g., Cottrell v. Caldwell, 85 F.3d 1480, 1491 (11th Cir. 1996). "A prison official possesses actual, subjective knowledge of a substantial risk when the official is 'both . . . aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and

19

. . . also draw[s] the inference.'" Bowen, 826 F.3d at 1320-21 (citation omitted). And, a trier of fact can "conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." Id. (citation and internal quotation marks omitted).

As noted supra, Jones alleges that he was attacked on September 3, 2017 by two unnamed inmates, and that Defendants knew inmate Caudle was going to harm him because: (1) inmate Caudle told Jones, "I'm doing what the Warden and Captain told me to do"; (2) Warden Mitchell told Warden Stewart, "That's the one Greg chose and got the phone from"; (3) when asked why inmate Caudle was allowed to "get away with what he was doing", Warden Raybon stated, "we went to school together"; and (4) Warden Raybon asked Warden Mitchell, "How do he know we have anything to do with this", and Warden Mitchell replied, "I guess he heard me when I told Cynthia [Stewart]."

As a preliminary matter, Jones does not contend that inmate Caudle or any of the named Defendants were present for the attack or that he had advised Defendants of any problems with inmate Caudle or any other inmates before the attack. Moreover, even accepting as true the statements that Jones attributes to Defendants Mitchell and Raybon, they are too vague and general to establish that these Defendants were aware that inmate Caudle had

20

arranged for Jones to be attacked, or that they had actually
instructed or authorized inmate Caudle to do so.  For instance,
the alleged statement by Warden Mitchell, that "That's the one
Greg chose and got the phone from" does not establish that
Defendants knew of the attack before it occurred, or that they
authorized the attack.  Likewise, while Jones claims that he asked
Warden Raybon why inmate Caudle was allowed to "get away with what
he was doing", and Warden Raybon responded that they had gone to
school together, these statements are too vague to support Jones's
claims.  Jones does not contend that he made any complaints
regarding inmate Caudle before the attack, and the record reflects
that shortly after the attack, both Jones and inmate Caudle
executed a living agreement, which signified that they were not
enemies and could continue living in general population together.
Accordingly, based on the record before the Court, Jones has failed
to establish that Defendants failed to protect him with respect to
the September 3, 2017 attack.  Consequently, summary judgment is
due to be **GRANTED** to Defendants on Jones's failure-to-protect
claim.

### D. Conspiracy.

"A plaintiff may state a § 1983 claim for conspiracy to
violate constitutional rights by showing a conspiracy existed that
resulted in the actual denial of some underlying constitutional

right." Grider v. City of Auburn, Ala., 618 F.3d 1240, 1260 (11th Cir. 2010). "The plaintiff attempting to prove such a conspiracy must show that the parties 'reached an understanding' to deny the plaintiff his or her rights." N.A.A.C.P. v. Hunt, 891 F.2d 1555, 1563 (11th Cir. 1990) (citation omitted); see Powell v. United States, 800 F. App'x 687, 695 (11th Cir. 2020) (per curiam) ("Simply put, the plaintiffs 'must show some evidence of agreement between the defendants.'") (quoting Rowe v. City of Fort Lauderdale, 279 F.3d 1271, 1284 (11th Cir. 2002)); see also Bailey v. Bd. of Cnty. Comm'rs of Alachua Cnty., 956 F.2d 1112, 1122 (11th Cir. 1992) ("[T]he linchpin for conspiracy is agreement.").

As noted *supra*, Jones claims that Defendants conspired with inmate Caudle to have Jones assaulted in order to obtain Jones's cell phone and continue to use an electronic devices to monitor Jones's thoughts. In addition to being vague, inmate Caudle's alleged statement that he was "doing what the Warden and Captain told [him] to do" is inadmissible hearsay and insufficient to show an agreement between inmate Caudle and any Defendant. See Gunville v. Walker, 583 F.3d 979, 985 (7th Cir. 2009) ("A party may not rely upon inadmissible hearsay to oppose a motion for summary judgment."). Moreover, the alleged statements by the Defendants are too vague to suggest an understanding or willful participation between the Defendants to violate Jones's civil rights. There

22

must be more than a "mere scintilla of evidence" of a conspiracy to survive summary judgment.  Rowe, 279 F.3d at 1284.

Accordingly, based on the record before the Court, Jones has failed to establish that Defendants conspired to violate his rights.  Consequently, summary judgment is due to be **GRANTED** to Defendants on Jones's conspiracy claim.

**E. Lost Property.**

To the extent Jones alleges that Defendants intentionally deprived him of his property upon return from the segregation unit and seeks to pursue that claim here, his claim is not actionable. The Supreme Court has held that an "an unauthorized intentional deprivation of property by a state employee does not constitute a violation of the procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful post-deprivation remedy for the loss is available."  Hudson, 468 U.S. at 533.  It has been determined, in the State of Alabama, that the Board of Adjustment provides a meaningful post-deprivation remedy for a plaintiff to seek redress for his missing property.  See Ala. Code § 41-9-60, *et seq.*; Smith v. Governor of Alabama, 562 F. App'x 806, 817-818 (11th Cir. 2014) (per curiam) (holding that the procedures of Ala. Code § 41-9-60, *et seq.*, provide a meaningful post-deprivation remedy through which a state inmate may seek relief for a loss or denial of property).  Furthermore, the post-

deprivation remedies available to plaintiff under Alabama tort law are sufficient to satisfy due process.  See Hudson, 468 U.S. at 534-35; see also Lindsey v. Storey, 936 F.2d 554, 561 (11th Cir. 1991) ("[A]s long as *some* adequate postdeprivation remedy is available, no due process violation has occurred."); Browning v. City of Wedowee, Ala., 883 F. Supp. 618, 623 (M.D. Ala. 1995). Because adequate post-deprivation remedies are available to Jones, the alleged deprivation does not violate the Due Process Clause of the Fourteenth Amendment.

Accordingly, no procedure exists for Jones to appeal a decision of the State Board of Adjustment to this court under the guise of § 1983.  To the extent Jones seeks to bring a state law claim for conversion, the court declines to exercise jurisdiction over the same pursuant to 28 U.S.C. § 1367.

**F. Retaliation.**

In his response to this motion, Jones appears to allege that the inmate assault against him on November 23, 2018 was in retaliation for his filing of this § 1983 action.  (See Doc. 29 at 3).

Prisoners are protected against retaliation for exercising the right of free speech pursuant to the First Amendment.  See Crawford-El v. Britton, 523 U.S. 574, 588 n.10 (1998).  To prevail on his claim of retaliation, Jones must establish: (1) his speech

was constitutionally protected; (2) the defendants' retaliatory conduct adversely affected the protected speech; and (3) there is a causal relationship between the retaliatory action and the protected speech. See Echols v. Lawton, 913 F.3d 1313, 1320 (11th Cir.), cert. denied, 139 S. Ct. 2678 (2019). An inmate carries the initial burden of establishing retaliation by a preponderance of the evidence – conclusory allegations or merely alleging the ultimate fact of retaliation is insufficient. Gladys v. Norman, 2018 WL 1041579, at *8, 2018 U.S. Dist. LEXIS 13161, at *18-19 (S.D. Ala. Jan. 25, 2018) (citing Flynn v. Scott, 2006 U.S. Dist. LEXIS 28280, at *14-16, 2006 WL 1236718 at *5-6 (M.D. Ala. May 8, 2006).

While the record in this action clearly demonstrates that Jones was attacked by multiple inmates on November 23, 2018, Jones fails to provide a single fact evidencing that it was in retaliation for filing this suit. As such, the record is completely devoid of evidence supporting a claim of retaliation, and Jones has failed to carry his burden of establishing such a claim. Conclusory allegations simply will not suffice. See Crawford-El, 523 U.S. at 600 (the prisoner must present with more than "general attacks" upon a defendant's motivations and must produce "affirmative evidence" of retaliation from which a jury could find that plaintiff had carried his burden of proving the

requisite motive).  For this reason, it is determined that summary judgment should be **GRANTED** in favor of Defendants on this claim.

### G. Failure to Investigate.

Jones makes the conclusory allegation that if ADOC Commissioner Jefferson Dunn (a non-party) and/or Defendant Warden Stewart "would have investigated when I contacted [them] . . ., this all could have been avoided."  (Doc. 29 at 4).  It appears that Jones is referencing a July 2, 2018 letter he wrote to Defendant Stewart, asking:

> What's its [sic] going to take in order to bring this thing with Greg Caudle and you all to come to an end. Do he got to try and kill me again in my sleep as it was attempted Sept. 3, 2017 or I got to try an[d] kill him.
>
> This, whatever it is that's going on has got me held back on every thing that I've filed in any court. . . . Not only can I continue to fight my case but every thing I've filed its been no response.  The good thing about all that is I have copies of every thing that I've mailed out or sent to Admin.
>
> I'm truly starting to believe that this whole thing was and is set up to have me attempt to kill him so I'll have no chance at getting out of prison.  I'm asking again, PLEASE transfer Greg Caudle so that I may continue my legal work and no other attempt is made on my life.

(Doc. 29 at 29).[11]

Taking the facts alleged as true, Jones fails to state facts

_____

[11] Plaintiff Jones also wrote a similar letter to non-party Commissioner Dunn on April 12, 2018 describing the details of this complaint.  (Doc. 29 at 26-28).

which could rise to the level of a violation of the plaintiff's federal constitutional rights. Simply put, the failure to investigate Jones's claims in a manner satisfactory to Jones is not a constitutional violation. See Vinyard v. Wilson, 311 F.3d 1340, 1356 (11th Cir. 2002) (holding that there was no constitutional right to an investigation following a violent incident based upon which the plaintiff raised a claim of excessive force); see also Stringer v. Doe, 503 F. App'x 888, 891 (11th Cir. 2013) (per curiam) (finding that plaintiff did not have a constitutional right to an internal investigation by law enforcement). Whether a claim is based on an inadequate investigation, or the failure to investigate at all, no § 1983 liability is created unless the defendant knew of a possibility of serious injury to plaintiff in advance.

The record reflects that following the September 3, 2017 assault, Jones and inmate Caudle signed a living agreement to simultaneously live in the general population. The record further reflects that from the time Jones was placed in a single-man cell on October 12, 2017, he inquired as to the reason behind his segregation holding and requested release. Upon his release to A-Dorm, the record is devoid of allegations of threats made by inmate Caudle or any other inmate or officer, and Jones pleads none in his complaint or response to this motion. As such, there are no

facts underlying this action indicating that Jones was at a substantial risk of serious harm or that Defendant Stewart was subjectively aware of any such risk prior to November 23, 2018. Thus, Defendants' failure to investigate is not a constitutional violation. See DeShaney v. Winnebago Cnty. Dept. of Social Servs., 489 U.S. 189, 196 (1989) (recognizing that "the Due Process Clauses generally confer no affirmative right to governmental aid, even where such aid may be necessary to secure life, liberty, or property interests of which the government itself may not deprive the individual").

Accordingly, the undersigned concludes that the conduct about which Jones complains does not rise to the level of a constitutional violation and that summary judgment is due to be **GRANTED** for Defendants on the failure-to-investigate claim.

### H. Conditions of Confinement.

In his pleadings, Jones describes being housed in cells that were without sink water for two days and being without a change of clothes, sheets, and blanket for two weeks. (Doc. 1 at 8-9; Doc. 29 at 3-4). To the extent he attempts to raise a claim for unconstitutional conditions of confinement, his claim fails.

To demonstrate such a violation, a plaintiff must prove three elements: "(1) a condition of confinement that inflicted unnecessary pain or suffering, (2) the defendant's 'deliberate

28

indifference' to that condition, and (3) causation." <u>LaMarca v. Turner</u>, 995 F.2d 1526, 1535 (11th Cir.), <u>cert. denied</u>, 510 U.S. 1164 (1994) (internal citations omitted). "The wrong in Eighth Amendment cases is the deliberate indifference to a constitutionally infirm condition; that wrong must, in turn, have been the proximate cause of the plaintiff['s] injuries[.]" <u>Id.</u> at 1538-39. To establish the first prong, Jones must show that he was deprived of "the minimal civilized measure of life's necessities[,]" <u>Rhodes</u>, 452 U.S. at 347, or of a "single human need[.]" <u>Wilson v. Seiter</u>, 501 U.S. 294, 305 (1991). To establish the second prong, Jones must show the Defendants "wantonly permitted the constitutionally infirm condition to persist" while "knowingly or recklessly disregard[ing] [his] basic needs[.]" <u>LaMarca</u>, 995 F.2d at 1535. The third prong "requires proof of an affirmative causal connection between the actions taken by a particular person 'under color of state law' and the constitutional deprivation." <u>Id.</u> at 1538 (quoting <u>Williams v. Bennett</u>, 689 F.2d 1370, 1380 (11th Cir. 1982)). "Nothing so amorphous as 'overall conditions' can rise to the level of cruel and unusual punishment when no specific deprivation of a single human need exists." <u>Wilson</u>, 501 U.S. at 305.

Jones has failed to allege the deprivation of a basic human need. Jones has also failed to connect any of his deprivations to

a named Defendant.  Jones has further failed to assert any of the inconveniences resulted in any injury to him or any unnecessary infliction of pain and suffering to which the Defendants were deliberately indifferent.  A plaintiff's experiences while incarcerated may be unpleasant at times, but such instances do not necessarily amount to a deprivation of a constitutional right.

Therefore, Defendants are entitled to summary judgment on any potential claim related to the conditions of Jones's confinement.

**IV.  CONCLUSION.**

Based upon the foregoing reasons, it is recommended that Defendants' motion for summary judgment be **GRANTED** as to all claims alleged in this action, and that this action be **DISMISSED with prejudice.**  To the extent Plaintiff moves for leave to amend his complaint to add the Alabama Department of Corrections as a defendant in this action (see Doc. 29 at 7), it is recommended that Plaintiff's motion be **DENIED.**

<u>**NOTICE OF RIGHT TO FILE OBJECTIONS**</u>

A copy of this report and recommendation shall be served on all parties in the manner provided by law.  Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this Court.  See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); S.D. Ala. GenLR 72(c).  The parties should

note that under Eleventh Circuit Rule 3-1, "[a] party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions if the party was informed of the time period for objecting and the consequences on appeal for failing to object. In the absence of a proper objection, however, the court may review on appeal for plain error if necessary in the interests of justice." 11th Cir. R. 3-1.

In order to be specific, an objection must identify the specific place in the Magistrate Judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the Magistrate Judge is not specific.

**DONE** this **8th** day of **March, 2021.**

**/s/ SONJA F. BIVINS**
**UNITED STATES MAGISTRATE JUDGE**